984

THE JUNO.
No. 627.

District Court, D. Massachusetts.
July 22, 1936.

Putnam, Bell, Dutch & Santry, of Boston, Mass., for libelant.

Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., for respondent Boston Towboat Co.

Bernard E. Carbin, of Boston, Mass., for claimant Martin F. Gaddis.

BREWSTER, District Judge.

This libel is brought by the owner of the barge George R. Stetson against the tug Juno and lighter No. 5, to recover damages resulting from a collision between the barge and the lighter.

Statement of Facts.

1. The barge George R. Stetson is owned by the libelant; the tug Juno by libelee Boston Towboat Company; and lighter No. 5 by A. A. Hersey, but at the time of the collision was under the control of the libelee Martin F. Gaddis.

2. On April 1, 1935, repairs were being made by libelee Gaddis on the Northern Avenue drawbridge over Fort Point Channel in the Port of Boston. Piles were be-

ing driven near the southerly pier, and in connection with this work lighter No. 5 was being used. The lighter was in charge of an employee of Gaddis. It was 110 feet long and 31 feet wide. While the work had been in progress, the lighter was located alongside the southerly pier of the drawbridge and was held in place by two lines, one running from a niggerhead at the starboard stern corner around the upstream end of the fender pier and fastened to a pile; the other running from the bow to a ring bolt on the adjoining structure. Between the port side of the lighter and the center pier of the draw was open water for a distance of 44½ feet. A small boat was tied along the port side of the lighter.

3. The barge George R. Stetson has a beam of 35 feet 1 inch. On the morning of April 1, 1935, it was lying at a dock up Fort Point Channel near Albany street. About 10 o'clock a. m. the libelee Boston Towboat Company was called to tow the barge, empty, out to the South Boston Flats anchorage. The Juno, a tug with 20-foot beam and 75 feet long, arrived about noon and took the barge in tow. The barge was towed by a hawser about 25 to 30 feet long, leading from the stern towing bitts of the tug to the chock in the bow of the barge. On that morning the weather was clear, light southwest wind, and the tide running out with a current of 1½ knots. The barge was in charge of a captain and two men. The tug was in charge of a mate and a deck hand. The tow proceeded down the channel through a series of bridges. As it approached the Summer street bridge and the Congress street bridge, at a speed of about 3 knots through the water, the tug blew for the bridge to open. When the Congress street bridge was opened, the master of the tug saw the lighter "lying on the South Boston side of the pier at Northern Avenue." The captain on the barge, at about the same time, made the same observation. As soon as the tug had passed the Congress street bridge, the master signaled for slower speed, put his wheel to left to haul over toward the center pier of the Northern avenue draw, with the barge directly behind. As the tug neared the Northern avenue draw, following two "attention whistles," the master shouted through a megaphone to some one on the lighter to pull the rowboat out of the way. This was done after slight delay but before the tug had come up to the lighter. I find

that, had the lighter not changed its position, there would have been ample room for the tug and barge to pass without collision. Whether, because the work of driving piles at that particular point had been completed, whether those in charge of the lighter had misunderstood the "attention whistles," or whether it was thought the tug could not safely pass until the lighter was moved, is not certain. But, whatever the reason, as the tug was about 50–75 feet away, orders were given to move the lighter upstream and around to the westerly side of the southerly pier. In order to do this, it was necessary to unfasten the line running from the bow and to connect up the other line with a donkey engine, so that by means of the engine the lighter would be pulled by means of that line upstream and around the corner of the piling. In the course of this operation the line at the stern was allowed to become slack, which permitted the action of the current, or tide, to swing the stern of the lighter out into the channel and into the path of the tow; the corner of the lighter striking the starboard bow of the barge, forcing it over against the center pier. As a result, a hole was punched in the barge, and the hawser parted.

When the stern of the lighter began to drift out into the channel, the tug was nearly abreast, and the barge was only a few feet away. After it was apparent that the lighter was not going to be held to the southerly side of the channel, it was then too late to execute any maneuver that would have avoided the collision.

I find that those working on the lighter were negligent in handling the lines and equipment in the movement. I find that no negligent act or failure on the part of the tug or the barge contributed to the accident.

## Conclusions of Law.

I rule:

(1) That the tug Juno was not negligent in attempting to pass through the draw before the lighter was removed.

(2) That the tug was not negligent in failing to take proper precautions in passing lighter No. 5 in the channel or in proceeding at an excessive speed.

(3) That the men in charge of lighter No. 5 were negligent in permitting it to swing out into the channel so as to collide with the barge.